## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS CHAFFEE, CAROL CHAFFEE, BILL FERULLO, ALICIA FERULLO, and LOIS KLOTZ | ) ) ) ) | |
| Plaintiffs, | ) ) | No. |
| v. | ) ) | JURY DEMAND |
| TALISMAN ENERGY USA INC.; and CENTRAL NEW YORK OIL AND GAS COMPANY, L.L.C.; | ) ) ) ) | |
| Defendants. | ) ) | |

**SERVICE INFORMATION:**

TALISMAN ENERGY USA INC.
c/o CT Corporation System
116 Pine Street, Suite 320
Harrisburg, PA 17101

CENTRAL NEW YORK OIL AND GAS COMPANY, L.L.C.
c/o Corporation Service Company
2595 Interstate Drive, Suite 103
Harrisburg, PA 17110

## <u>COMPLAINT</u>

Plaintiffs THOMAS CHAFFEE, CAROL CHAFFEE, BILL FERULLO,

ALICIA FERULLO, and LOIS KLOTZ, through their undersigned counsel, and

for their Complaint state the following:

## INTRODUCTION

1.     This is an action by residents or owners of property in Bradford County, Pennsylvania for private, temporary, continuing, abatable nuisance, and negligence/recklessness against Defendants TALISMAN ENERGY USA INC. and CENTRAL NEW YORK OIL AND GAS COMPANY, L.L.C. (hereinafter sometimes referred to collectively as "Defendants") for damages arising from Defendants' natural gas exploration, extraction, transportation, storage, and other associated activities described more fully below.

2.     Plaintiffs, Plaintiffs' properties, and Plaintiffs' quality of life have all been negatively impacted and Plaintiffs are no longer able to enjoy their homes or property in the way they previously enjoyed prior to Defendants' acts or omissions described below.

## PARTIES

3.     Plaintiffs THOMAS CHAFFEE and CAROL CHAFFEE (hereinafter referred to as "the Chaffees" or "Plaintiffs Chafee") are individuals formerly residing at 1629 Casterline Road, Warren Center, Pennsylvania in Warren Township, Bradford County. The Chaffees were residents of Bradford County from 1972 until approximately March 13, 2013, when they were forced to leave their home due to the harmful activities of Defendants. The Chaffees still own and maintain their property in Bradford County.

2

4.     Prior to leaving, the Chaffees used their property as a residence and for recreational activities.

5.     Since approximately March 13, 2013, the Chaffees have been unable to remain at their property for any substantial amount of time and have thus been unable to use their property in any meaningful way.

6.     Plaintiffs BILL FERULLO and ALICIA FERULLO (hereinafter referred to as "the Ferullos" or "Plaintiffs Ferullo") are individuals residing at 4834 LeRaysville Rd, Warren Center, Pennsylvania in Warren Township, Bradford County. The Ferullos have been residents of Bradford County or owned their current residence since 1974.

7.     The Ferullos use their property as a residence and for recreational activities.

8.     Plaintiff LOIS KLOTZ (hereinafter referred to as "Plaintiff Klotz")) is an individual residing at 2332 Warren Center Road, Warren Center, Pennsylvania in Warren Township, Bradford County. Plaintiff Klotz has been a resident of Bradford County since 1981 and has resided at the above property since June 1999.

9.     Plaintiff Klotz uses her property as a residence and for recreational activities.

10.     Defendant TALISMAN ENERGY USA INC. (hereinafter sometimes referred to as "Talisman") is a Delaware Corporation, registered to conduct

3

business within the Commonwealth of Pennsylvania and with a registered office located at CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania.

11.    Defendant CENTRAL NEW YORK OIL AND GAS COMPANY, LLC (hereinafter referred to as "Central New York") is a New York Limited Liability Company, registered to conduct business within the Commonwealth of Pennsylvania and with a registered office located at Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania.

12.    Defendants have engaged in drilling activities, or had others engage in such activities on their behalf, or have owned, operated, or maintained natural gas wells or pipelines in Bradford County, Pennsylvania and in close proximity to properties owned or rightfully occupied by Plaintiffs that have and continue to adversely impact Plaintiffs, Plaintiffs' properties, Plaintiffs' quality of life, and Plaintiffs' use and enjoyment of property.

## JURISDICTION AND VENUE

13.    Jurisdiction in this Court is proper under 28 U.S.C. § 1332.

14.    Plaintiffs are all citizens of the Commonwealth of Pennsylvania.

15.    Defendant, Talisman Energy USA Inc., is a corporation incorporated under the laws of Delaware and with its principal place of business located in Calgary, Alberta, Canada.

4

16.     Defendant Central New York Oil and Gas Company, LLC is a limited liability company formed under the laws of New York with its principal place of business located in Owego, New York.

17.     The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

18.     Venue is proper in this Court under 28 U.S.C. § 1391, because a substantial part of the events giving rise to Plaintiffs' claims occurred within this judicial district.

## GENERAL ALLEGATIONS

19.     Plaintiffs all have possessory interests in property in Bradford County Pennsylvania.

20.     Since living in Bradford County, the Plaintiffs had come to expect and enjoy the quiet, fresh air, fresh water, privacy, darkness of night, and overall peacefulness of the area.

21.     As a result of Defendants' natural gas exploration, extraction, transportation, pipeline production and maintenance, and related activities in close proximity to Plaintiffs' properties, Plaintiffs have suffered and continue to suffer significant damages, including to their rights to the use and enjoyment of their property for which they are entitled to compensation.

**Natural Gas Wells**

22.　Upon reasonable belief, beginning in late 2010 and continuing thereafter, Defendant Talisman engaged in drilling activities, or had others engage in drilling activities on its behalf; or owned, operated, or maintained several natural gas wells in Bradford County, Pennsylvania, in close proximity to Plaintiffs' homes and properties including but not limited to:

    a. Miller Well No. 1H ("MILLER 1");
    b. Miller Well No. 2H ("MILLER 2"); and
    c. Miller Well No. 3H ("MILLER 3").
    d. Green Newland Well No. 1H ("GREEN NEWLAND 1");
    e. Harnett Well No. 1H ("HARNETT 1");
    f. Young Well No. 1R ("YOUNG 1"); and
    g. Young Well No. 2R ("YOUNG 2").

23.　Upon reasonable belief, in addition to the wells listed above, Defendant Talisman owns or operates approximately 34 natural gas wells within close proximity to Plaintiffs' properties.

**Miller Wells**

24.　Upon reasonable belief, beginning in or around April 2012, Defendant Talisman drilled, or had drilled on its behalf, the Miller well pad.

25.　Upon reasonable belief, Defendant Talisman hydraulically fractured, or had hydraulically fractured on its behalf, the Miller well pad.

6

26.    Upon reasonable belief, the Miller well pad was constructed in close proximity to Plaintiffs' properties.

27.    Defendant Talisman's drilling and hydraulic fracturing activities at the Miller well pad caused a very loud, intermittent, and unpleasant noise, which could be heard from hundreds of feet away and disturbed Plaintiffs' daily activities.

28.    Upon reasonable belief, shortly after the drilling or hydraulic fracturing of the Miller well pad, Defendant Talisman, or one of its agents or employees acting on behalf of Defendant Talisman, engaged in flaring activities on the Miller well pad, causing significant and frequent noise sounding like a jet engine, which could be heard intermittently from hundreds of feet away.

29.    In addition to the sound, upon reasonable belief, the flaring at the Miller well pad released toxic or hazardous smoke into the air and ground of the surrounding areas, including the Ferullos' property.

30.    The intermittent natural gas operations at the Miller well pad produced and continue to produce a very loud, intermittent, and unpleasant noise which can be heard from several hundred feet away.

31.    The noise associated with the operation of the Miller well pad can frequently be heard from Plaintiffs' homes.

7

32.     Defendant Talisman's natural gas activities also intermittently create a strong and unpleasant chemical odor which can often be smelled, and even tasted, from Plaintiffs' properties.

33.     Defendant Talisman, through constructing, maintaining, or operating the Miller well pad caused and continues to cause an intermittent and extremely disruptive and dangerous amount of large truck and heavy machinery traffic to proceed down the inadequately small rural roads leading to and from the well pad.

34.     The increased traffic caused by Defendant Talisman caused and continues to cause substantial intermittent dust and diesel fumes to enter Plaintiffs' properties.

35.     Defendant Talisman, through constructing, maintaining, or operating the Miller well pad caused or continues to cause an intermittent and excessive amount of dust, silica sand, or particulate matter to enter the air and blow onto the surrounding areas, including Plaintiffs' properties.

36.     Upon reasonable belief some or all of the problems associated with the Miller well pad are caused by its negligent construction, operation, or maintenance by Defendant Talisman.

37.     Upon reasonable belief, the problems caused by the Miller well pad can reasonably and practicably be abated, fixed, or mitigated by Defendant Talisman.

8

**Green Newland Well**

38.     Upon reasonable belief, beginning in or around June, 2011, Defendant Talisman drilled, or had drilled on its behalf, the Green Newland 1 well.

39.     Defendant Talisman drilled, or had drilled on its behalf, Green Newland 1 approximately 1,800 feet from the Ferullos' property.

40.     Defendant Talisman's drilling activities at Green Newland 1 caused intermittent, substantial, and extremely disruptive truck and heavy machinery traffic, resulting in as many as 400 trucks per day traveling up and down inadequately small roads leading to and from the well site and in close proximity to Plaintiffs' property.

41.     Upon reasonable belief, on March 21, 2012, Defendant Talisman began hydraulically fracturing Green Newland 1.

42.     Defendant Talisman, through its hydraulic fracturing activities at Green Newland 1, cause or continues to cause large plumes of silica sand to periodically enter the air and settle on the surrounding areas, including the Ferullos' property.

43.     Upon reasonable belief, beginning on April 26, 2012 and continuing through May 3, 2012, Defendant Talisman continuously burned off natural gas and other harmful gases ("flared") from the Green Newland 1 well.

9

44.     Upon reasonable belief, during the time mentioned in the preceding paragraph, the Green Newland 1 well was flared around the clock for 7 straight days.

45.     The flaring activities at Green Newland 1 caused significant noise sounding like a jet engine, which could be heard from hundreds of feet away.

46.     In addition to the sound, upon reasonable belief, the flaring activities at Green Newland 1 released toxic or hazardous smoke into the air and ground of the surrounding areas.

47.     Defendant Talisman's natural gas operations at Green Newland 1 produced and continue to intermittently produce other loud and unpleasant noises which can often be heard from several hundred feet away.

48.     The noise associated with the maintenance and operation of Green Newland 1 can usually be heard from the Ferullos' home.

49.     Defendant Talisman, through its construction, maintenance, or operation of Green Newland 1, caused and continues to cause an intermittent, extremely disruptive, and extremely dangerous amount of large truck and heavy machinery traffic to proceed down the inadequately small rural roads leading to and from the well pad.

10

50.     Upon reasonable belief, some or all of the problems associated with Green Newland 1 are caused by its negligent construction, operation, or maintenance by Defendant Talisman.

51.     Upon reasonable belief, the problems caused by Green Newland 1 can reasonably and practicably be abated, fixed, or mitigated by Defendant Talisman.

**Harnett Well**

52.     Upon reasonable belief, Defendant Talisman drilled, or had drilled on its behalf, the Harnett 1 well, located approximately 3,000 feet from the Ferullos' property.

53.     Upon reasonable belief, beginning on May 1, 2012, Defendant Talisman flared the Harnett 1 well continuously for 7 days.

54.     The flaring activities at Harnett 1 caused significant noise sounding like a jet engine, which could be heard from hundreds of feet away.

55.     In addition to the sound, upon reasonable belief, the flaring activities at Harnett 1 released toxic or hazardous smoke into the air and ground of the surrounding areas.

56.     Defendant Talisman's natural gas operations at Harnett 1 produced and continue to intermittently produce other loud and unpleasant noises which can often be heard from several hundred feet away.

11

57.    The noise associated with the operation of Harnett 1 can usually be heard from the Ferullos' home.

58.    Defendant Talisman, through its construction, maintenance, or operation of Harnett 1, caused and continues to cause an extremely disruptive and dangerous amount of large truck and heavy machinery traffic to proceed down the inadequately small rural roads leading to and from the well pad.

59.    Upon reasonable belief, some or all of the problems associated with Harnett 1 are caused by its negligent construction, operation, or maintenance by Defendant Talisman.

60.    Upon reasonable belief, the problems caused by Harnett 1 can reasonably and practicably be abated, fixed, or mitigated by Defendant Talisman.

**Young Wells**

61.    Upon reasonable belief, in or around January 2011, Defendant Talisman drilled, or had drilled on its behalf, the Young 1 natural gas well.

62.    The Young well pad is located approximately 800 feet behind Defendant Klotz's property and approximately 700 feet behind the Chaffees' property.

63.    Upon reasonable belief, in or around February 2011, Defendant Talisman hydraulically fractured Young 1.

12

64. Upon reasonable belief, in or around December 2012, Defendant Talisman drilled, or had drilled on its behalf, the Young 2 natural gas well.

65. On or around December 13, 2012, Defendant caused or failed to prevent a spill on the Young well pad consisting of an unusually large quantity of "top hole water" emanating from the drilling rig along with, upon reasonable belief, various other hazardous chemicals used by Defendant Talisman during the drilling process.

66. Upon reasonable belief, the above spill also caused large amounts of water along with hazardous chemicals to leave the Young well pad and run downhill on to Plaintiff Klotz's property.

67. Upon reasonable belief, this spill was caused by Defendant Talisman negligently drilling too close to or directly into an underground water deposit.

68. Immediately after Young 1 was hydraulically fractured, Plaintiffs Klotz and Chaffee noticed a dramatic change in the quality of their water supplies. The water coming from the water well located on the Chaffees' property thereafter frequently turned milky white in color with an oily sheen that would eventually settle into small clumps in the water. Additionally, Plaintiff Klotz subsequently had the water coming from the water well located on her property tested and discovered the presence of methane.

13

69. In or around February 2013, Defendant Talisman installed a vent to the Chaffees' water well in order to vent excess methane accumulating in their water well and provided a water buffalo to supply the Chaffees with safe drinking water.

70. Upon reasonable belief, in or around November 2012, Defendant Talisman dumped hazardous flowback fluid directly onto the shoulder of a public road in close proximity to Plaintiffs' properties.

71. Upon reasonable belief, Defendant Talisman periodically flared the natural gas wells located on the Young well pad.

72. The flaring activities on the Young well pad caused significant noise sounding like a jet engine, which could often be heard from hundreds of feet away and from within Plaintiffs Klotz and Chaffee's homes.

73. In addition to the sound, upon reasonable belief, the flaring activities on the Young well pad released toxic or hazardous smoke into the air and the surrounding areas.

74. Defendant Talisman's natural gas operations at the Young well pad intermittently produced and continue to produce other loud and unpleasant noises that can usually be heard from several hundred feet away.

75. The noise associated with the operation of the Young well pad can often be heard from inside Plaintiffs Klotz and Chaffee's homes.

14

76.     Defendant Talisman's construction, maintenance, or operation of the Young well pad, caused and continues to cause an intermittent, extremely disruptive, and extremely dangerous amount of large truck and heavy machinery traffic to proceed down the inadequately small rural roads leading to and from the well pad.

77.     Defendant Talisman's natural gas operations, especially hydraulic fracturing, at the Young well pad caused or continue to cause large plumes of dust and silica sand to periodically enter the air and settle on the surrounding area including Plaintiffs Klotz and Chaffee's properties.

78.     Defendant Talisman, in connection with its natural gas operations at the Young well pad, intermittently uses extremely bright lights to illuminate the well pad, sometimes 24 hours a day.

79.     The lights intermittently used by Defendant Talisman on the Young well pad often shine directly into Plaintiffs Klotz and Chaffee's homes, disrupting their daily activities, most notably sleeping.

80.     Upon reasonable belief, Defendant Talisman's activities at the Young well pad intermittently and frequently release substantial amounts of toxic fumes, including, but not limited to; benzene, ethylbenzene, trimethylbenzene, toluene, and xylene, which leave the well pad and settle on Plaintiffs Klotz and Chaffee's properties and in their homes.

15

81. The fumes periodically coming from the Young well pad have caused Plaintiffs Klotz and Chaffee to experience burning eyes, throat, and lungs, dizziness, nausea, irritated skin, a persistent metallic taste in their mouths, and headaches, among other symptoms.

82. On or around March 13, 2013, the fumes from the Young well pad became so severe that the Chaffees went to bed that night genuinely afraid that they might never wake up again.

83. The following day, the Chaffees left their home, leaving behind their personal belongings, due to the overwhelming fear that remaining in their home would cause them to die in their sleep from inhalation of the toxic fumes.

84. Since leaving in March, the Chaffees have only returned to their property long enough to mow the yard or perform other various maintenance tasks.

85. Upon reasonable belief, some or all of the problems associated with the Young well pad are caused by its negligent construction, operation, or maintenance by Defendant Talisman.

86. Upon reasonable belief, the problems caused by the Young well pad can reasonably and practicably be abated, fixed, or mitigated by Defendant Talisman.

### Pipelines

**Stagecoach Pipeline**

87.     In or around 2001, Defendant Central New York, constructed, or had constructed on its behalf, a 30-inch natural gas transmission pipeline (hereinafter referred to as the "Stagecoach Pipeline").

88.     The Stagecoach Pipeline was built, at points, as close as 1200 feet from the Ferullos' property.

89.     Upon reasonable belief, at all times relevant hereto, Defendant Central New York, owned, maintained, or operated the Stagecoach Pipeline.

90.     Upon reasonable belief, on September 7, 2011, Defendant Central New York vented the contents of the Stagecoach Pipeline continuously for ten hours, releasing large amounts of natural gas and other hazardous or radioactive chemicals into the air which then drifted and settled on the surrounding area, including the Ferullos' property.

91.     Defendant Central New York's venting of the Stagecoach Pipeline also created an unreasonably loud and unpleasant noise, sounding like a jet engine.

92.     The Ferullos have no way of knowing if or when Defendant Central New York might vent the Stagecoach Pipeline in the future.

93.     Defendant Central New York's pipeline operation and maintenance activities at the Stagecoach Pipeline caused and continue to cause an intermittent, extremely disruptive, and extremely dangerous amount of large truck and heavy

machinery traffic to proceed down the inadequately small rural roads surrounding Plaintiffs' properties.

94.     Additionally, the traffic caused by Defendant Central New York's pipeline operation and maintenance activities at the Stagecoach Pipeline intermittently caused and continue to cause disruptive amounts of dust and diesel fumes to enter the air on and around Plaintiffs' properties.

95.     Upon reasonable belief, the problems associated with the Stagecoach Pipeline could be reasonably and practicably abated, fixed or mitigated by Defendant Central New York.

### Talisman Gathering Pipelines

96.     Upon reasonable belief, Defendant Talisman owns, maintains, or operates at least 4 gathering pipelines (hereinafter collectively referred to as the "Talisman Pipelines") currently located within approximately 1,000 to 1,800 feet from the Ferullos' property.

97.     Defendant Talisman's pipeline operation and maintenance activities in close proximity to the Ferullos' property caused and continue to cause an intermittent, extremely disruptive, and extremely dangerous amount of large truck and heavy machinery traffic to proceed down the inadequately small rural roads surrounding Plaintiffs' properties.

18

98. Additionally, the traffic caused by Defendant Talisman's pipeline operation and maintenance activities intermittently caused and continue to cause disruptive amounts of dust and diesel fumes to enter the air on and around Plaintiffs' properties.

99. On or around May 6, 2013, Defendant Talisman was drilling under or in very close proximity to the Wappasening Creek and approximately a mile and a half from the Ferullos' property and caused a blowout, spilling large amounts of chemical-laden "drilling mud" into the creek and turning the entire waterway gray.

100. The Ferullos reasonably fear that a similar spill may occur as a result of Defendant Talisman's continued pipeline construction and maintenance activities near their property.

101. Upon reasonable belief, the problems associated with the Stagecoach Pipeline could be reasonably and practicably abated, fixed or mitigated by Defendant Central New York.

### Impoundment Ponds

102. Upon reasonable belief, Defendant Talisman owns, operates, or maintains the several " water impoundment ponds", which are located within 4 miles of Plaintiffs' properties, including but not limited to:

> a. The Miller Impoundment pond;
> b. The Antisdel Impoundment pond;
> c. The Wheaton Impoundment pond; and

19

      d.  The Manchester Impoundment pond.

103.  Plaintiff Bill Ferullo has, on multiple occasions, witnessed water tanker trucks leaving the surrounding Talisman natural gas wells with what he believes to be "produced water" and returning to Defendant Talisman's impoundment ponds.

104.  Upon reasonable belief, the produced water generated by Defendant Talisman's natural gas wells contains a significant amount of toxic, radioactive, or otherwise hazardous substances.

105.  The large tanker trucks carrying produced water from Defendant Talisman's wells to Defendant Talisman's impoundment ponds, over inadequately small rural roads create a substantial and frequent risk of accidents and spills of hazardous contaminants on or near Plaintiffs' properties.

106.  Upon reasonable belief, Defendant Talisman's impoundment ponds are used to store both freshwater and produced water from the surrounding area, and pose a substantial risk of leaking and contamination of the surrounding area.

107.  Defendant Talisman's operation and maintenance of its impoundment ponds has resulted in an intermittent, extremely disruptive, and extremely dangerous amount of large truck and heavy machinery traffic to proceed down the inadequately small rural roads surrounding Plaintiffs' properties at all hours of the day and night.

## COUNT I – PRIVATE NUISANCE
### Plaintiffs vs. Defendant Talisman

108. Plaintiffs repeat and reallege the allegations of the above and foregoing paragraphs of this Complaint as though set forth in this paragraph at length.

109. Defendant Talisman, by its acts or omissions, including those of its officers, agents, contractors, or employees has negligently, recklessly, knowingly, intentionally, or otherwise frequently, repeatedly, and unreasonably impaired the Plaintiffs' private use and enjoyment of their property by improperly engaging in natural gas activities and causing the following, but not limited to the following conditions:

a. Intermittent, but prolonged discharges of toxic and or radioactive substances and other emissions into the air by periodically venting or flaring their natural gas wells and or pipelines;

b. Intermittent and excessive noise from constant operation, flaring or venting of its natural gas wells or pipelines;

c. Damage to property from pollution of the land surrounding Defendant Talisman's operations, including plaintiffs' properties;

d. Intermittent and excessive lights;

e. Intermittent and excessive dust, silica sand, and other particulate matter;

21

    f.   Intermittent, excessive and unpleasant odor produced by open impoundments, truck traffic and recurring venting or flaring of Defendant Talisman's natural gas wells and pipelines; and

    g.   Intermittent, excessive and unreasonable truck and heavy machinery transportation and traffic over inadequate rural roads.

    110.  As a direct and proximate result of Defendant Talisman's acts or omissions in the operation of its wells, pipelines, and impoundments, the Plaintiffs have suffered significant impairment to their use and enjoyment of property, including, but not limited to property damage, substantial discomfort, annoyance, offense to the senses, angst, anxiety, distress, disgust, embarrassment, fear, concern, difficulty sleeping, health concerns, deprivation of the ability to further develop the property, destruction of the serenity of the property, and concern for and actual damage to their air and water quality, for which they are entitled to compensation.

    111.  Defendant Talisman, including its officers, agents, or employees knew or was substantially certain that its natural gas activities would create and maintain such a continuing nuisance to Plaintiffs.

    112.  Each of the aforesaid injurious conditions created by Defendant Talisman is reasonably and practicably abatable through better operation, procedures, management, repair, technology, oversight, maintenance, or otherwise.

113. However, Defendant Talisman has failed to take known reasonable, practicable, and necessary steps to warn of, abate, minimize, or eliminate such conditions.

114. Defendant Talisman's use of property and the impairment to Plaintiffs' use and enjoyment of their property has been and is unreasonable and abnormally dangerous.

115. As a result, Defendant Talisman is liable for all of the damages and injuries to the Plaintiffs caused by its acts or omissions and natural gas exploration, transportation, and disposal activities, and to abate such nuisance.

116. Defendant Talisman knew, or should have known, that its conduct described herein, including, but not limited to the knowing frequent releases of toxic and dangerous emissions, had and continues to have a substantial likelihood of causing frequent and significant injury to Plaintiffs, Plaintiffs' property, Plaintiffs' property rights, and Plaintiffs' quiet use and enjoyment of their property.

117. Further, some or all of the acts or omissions of Defendant Talisman described herein, including those of its officers, agents, contractors, or employees, were intentional or grossly, recklessly, or wantonly negligent, and were done with utter disregard for the Plaintiffs' rights, property, safety, and well-being, and therefore, Plaintiffs are entitled to an award of punitive damages.

23

**WHEREFORE,** Plaintiffs each hereby seek all damages allowed under the laws of the Commonwealth of Pennsylvania from the Defendant Talisman to compensate for the interference of their right to the use and quiet enjoyment of their respective properties; for punitive damages to be determined at trial in an amount set by law or the trier of fact sufficient to punish Defendant Talisman for the above-described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendant Talisman, and for such other and further relief as this honorable Court may deem just and appropriate.

**COUNT II – NEGLIGENCE/RECKLESSNESS**
**Plaintiffs vs. Defendant Talisman**

118. Plaintiffs repeat and reallege the allegations of the above and foregoing paragraphs of this Complaint, as though set forth in this paragraph at length.

119. Defendant Talisman, at all times relevant herein, owed the following, but not limited to the following, duties of reasonable care to Plaintiffs:

> a. To reasonably and responsibly own, operate, control, and maintain their wells as not to injure Plaintiffs;
>
> b. To take all measures reasonably necessary to inform and protect Plaintiffs from dangerous or unreasonable natural gas exploration, production, and transportation activities;

24

c. To warn of the conditions and harms that their wells might, would, or do cause Plaintiffs;

d. To properly manage and dispose of residual waste from their activities;

e. To properly manage all aspects of their natural gas exploration, production, and transportation activities, including those carried out by themselves or their agents, officers, contractors, or employees;

f. To mitigate noise, light, and dust resulting from their activities;

g. To mitigate excessive odors resulting from their activities;

h. To not cause damage to Plaintiffs' land;

i. To prevent intermittent releases of hazardous, toxic, or radioactive substances into the air or water;

j. To prohibit intermittent discharges of methane, ethane, propane, natural gas, or other toxic, hazardous, dangerous, or radioactive substances and gases into the air;

k. To minimize excessive truck and heavy machinery use and traffic;

l. To properly and safely grade land used for its activities so as to not impair the rights and safety of neighbors;

m. To follow all regulations, laws, and requirements applicable to its activities, including, but not limited to, 42 U.S.C. Section 7412(r)(1);

n. To identify hazards which may result from releases of regulated substances or other extremely hazardous substances, including but not limited to, methane, ethane, propane, and natural gas from its stationary sources, using appropriate hazard assessment techniques;

o. To design and maintain safe facilities, taking such steps as are necessary to prevent releases of regulated substances or other extremely hazardous substances, including, but not limited to, methane, ethane, propane, and natural gas;

p. To minimize the consequences of releases of regulated substances or other extremely hazardous substances, including, but not limited to, methane, ethane, propane, and natural gas; and

q. To properly install and maintain its pipelines so as not to cause damage to trees and other vegetation.

120. Defendant Talisman, including its officers, agents, contractors, or employees, has frequently breached these duties of care to the Plaintiffs, or was

otherwise negligent, thereby directly and proximately causing significant damage to the Plaintiffs, for which they are entitled to compensation.

121. Defendant Talisman, including its officers, agents, or employees, should have taken reasonable precautions and measures to prevent or mitigate the problems caused by its activities.

122. As a direct and proximate result of Defendant Talisman's acts or omissions stated herein, the Plaintiffs have suffered damages for which they are entitled to compensation.

123. Defendant Talisman, including its officers, agents, or employees, knew or in the exercise of reasonable care should have known, that such problems caused by its negligent and reckless conduct, and the resultant harm to the Plaintiffs and their properties were foreseeable consequences of Defendant Talisman's acts or omissions in the manner in which it engaged in its gas drilling, production, and transportation activities.

124. Defendant Talisman's acts or omissions including those of its officers, agents, contractors, or employees were the direct and proximate cause of the damages to the Plaintiffs alleged herein.

125. Defendant Talisman knew, or should have known, that its conduct described herein, including, but not limited to the knowing frequent releases of toxic and dangerous emissions, had and continues to have a substantial likelihood

27

of causing frequent and significant injury to the Plaintiffs, Plaintiffs' properties, and Plaintiffs' property rights.

126. Further, some or all of the acts or omissions of Defendant Talisman described herein, including those of its officers, agents, contractors, and/or employees were intentional or grossly, recklessly, or wantonly negligent, and were done with utter disregard for the Plaintiffs' rights, property, safety, and wellbeing, and therefore, Plaintiffs are entitled to an award of punitive damages.

**WHEREFORE,** Plaintiffs each hereby seek all damages allowed under the laws of the Commonwealth of Pennsylvania from the Defendant Talisman to compensate the Plaintiffs for all injuries caused by Defendant Talisman's negligent and reckless acts or omissions, for punitive damages to be determined at trial in an amount set by law or the trier of fact sufficient to punish Defendant Talisman for the above-described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendant Talisman; and for such other and further relief as this honorable Court may deem just and appropriate.

## COUNT III – PRIVATE NUISANCE
### The Ferullos vs. Defendant Central New York

127. Plaintiffs repeat and reallege the allegations of the above and foregoing paragraphs of this Complaint as though set forth in this paragraph at length.

28

128.  Defendant Central New York, by its acts or omissions, including those of its officers, agents, contractors, or employees has negligently, recklessly, knowingly, intentionally, or otherwise frequently, repeatedly, and unreasonably impaired the Ferullos' private use and enjoyment of their property by improperly engaging in natural gas activities and causing the following, but not limited to the following conditions:

    a.  Intermittent, but prolonged discharges of toxic or radioactive substances and other emissions into the air by venting or flaring its natural gas pipelines;

    b.  Intermittent and excessive noise from periodic venting of its natural gas pipelines;

    c.  Intermittent and excessive and unreasonable truck and heavy machinery transportation and traffic over inadequate rural roads; and

    d.  Intermittent, excessive and unpleasant odor produced by truck traffic and recurring venting of Defendant Central New York's natural gas pipelines.

129.  As a direct and proximate result of Defendant Central New York's acts or omissions in the operation of its pipelines, the Ferullos have suffered significant impairment to their use and enjoyment of property, including, but not limited to substantial discomfort, annoyance, offense to the senses, angst, anxiety,

distress, disgust, embarrassment, fear, concern, difficulty sleeping, health concerns, deprivation of the ability to further develop the property, destruction of the serenity of the property, and concern for damage to their air quality, for which they are entitled to compensation.

130. Defendant Central New York, including its officers, agents, or employees knew or was substantially certain that its natural gas activities would create and maintain such a continuing nuisance to the Ferullos.

131. Each of the aforesaid injurious conditions created by Defendant Central New York is reasonably and practicably abatable through better operation, procedures, management, repair, technology, oversight, maintenance, or otherwise.

132. However, Defendant Central New York has failed to take known reasonable, practicable, and necessary steps to warn of, abate, minimize, or eliminate such conditions.

133. Defendant Central New York's use of property and the impairment to the Ferullos' use and enjoyment of their property has been and is unreasonable and abnormally dangerous.

134. As a result, Defendant Central New York is liable for all of the damages and injuries to the Ferullos caused by its acts or omissions and natural gas exploration, transportation, and disposal activities, and to abate such nuisance.

30

135.  Defendant Central New York knew, or should have known, that its conduct described herein, including, but not limited to the knowing frequent releases of toxic and dangerous emissions, had and continues to have a substantial likelihood of causing frequent and significant injury to the Ferullos, the Ferullos' property, the Ferullos' property rights, and the Ferullos' quiet use and enjoyment of their property.

136.  Further, some or all of the acts or omissions of Defendant Central New York described herein, including those of its officers, agents, contractors, or employees, were intentional or grossly, recklessly, or wantonly negligent, and were done with utter disregard for the Ferullos' rights, property, safety, and well-being, and therefore, the Ferullos are entitled to an award of punitive damages.

**WHEREFORE,** Plaintiffs Ferullo hereby seek all damages allowed under the laws of the Commonwealth of Pennsylvania from the Defendant Central New York to compensate for the interference of their right to the use and quiet enjoyment of their property; for punitive damages to be determined at trial in an amount set by law or the trier of fact sufficient to punish Defendant Central New York for the above-described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendant Central New York, and for such other and further relief as this honorable Court may deem just and appropriate.

31

## COUNT IV – NEGLIGENCE/RECKLESSNESS
### The Ferullos vs. Defendant Central New York

137. Plaintiffs repeat and reallege the allegations of the above and foregoing paragraphs of this Complaint, as though set forth in this paragraph at length.

138. Defendant Central New York, at all times relevant herein, owed the following, but not limited to the following, duties of reasonable care to the Ferullos:

    a. To reasonably and responsibly own, operate, control, and maintain its pipelines as not to injure the Ferullos;

    b. To take all measures reasonably necessary to inform and protect the Ferullos from dangerous or unreasonable natural gas transportation activities;

    c. To warn of the conditions and harms that its pipelines might, would, or do cause the Ferullos;

    d. To properly manage and dispose of residual waste from its activities;

    e. To properly manage all aspects of its natural gas transportation activities, including those carried out by itself or its agents, officers, contractors, or employees;

    f. To mitigate excessive noise resulting from its activities;

32

g. To not cause damage to the Ferullos' land; and

h. To prevent releases of hazardous, toxic, or radioactive substances into the air or water.

i. To prohibit intermittent discharges of methane, ethane, propane, natural gas, or other toxic, hazardous, dangerous, or radioactive substances and gases into the air;

j. To minimize excessive truck and heavy machinery use;

k. To properly and safely grade land used for its activities so as to not impair the rights and safety of neighbors;

l. To follow all regulations, laws and requirements applicable to its activities, including, but not limited to, 42 U.S.C. Section 7412(r)(1);

m. To identify hazards which may result from releases of regulated substances or other extremely hazardous substances, including but not limited to, methane, ethane, propane, and natural gas from its stationary sources, using appropriate hazard assessment techniques;

n. To design and maintain safe facilities, taking such steps as are necessary to prevent releases of regulated substances or other

33

extremely hazardous substances, including, but not limited to, methane, ethane, propane, and natural gas;

o. To minimize the consequences of releases of regulated substances or other extremely hazardous substances, including, but not limited to, methane, ethane, propane, and natural gas; and

p. To properly install and maintain its pipeline so as not to cause damage to trees and other vegetation.

139. Defendant Central New York, including its officers, agents, contractors, or employees, has frequently breached these duties of care to the Ferullos, or was otherwise negligent, thereby directly and proximately causing significant damage to the Ferullos, for which they are entitled to compensation.

140. Defendant Central New York, including its officers, agents, or employees, should have taken reasonable precautions and measures to prevent or mitigate the problems caused by its activities.

141. As a direct and proximate result of Defendant Central New York's acts or omissions stated herein, the Ferullos have suffered damages for which they are entitled to compensation.

142. Defendant Central New York, including its officers, agents, or employees, knew or in the exercise of reasonable care should have known, that such problems caused by its negligent and reckless conduct, and the resultant harm

34

to the Ferullos and their property were foreseeable consequences of Defendant Central New York's acts or omissions in the manner in which it engaged in its gas transportation activities.

143. Defendant Central New York's acts or omissions including those of its officers, agents, contractors, or employees were the direct and proximate cause of the damages to the Ferullos alleged herein.

144. Defendant Central New York knew, or should have known, that its conduct described herein, including, but not limited to the knowing frequent releases of toxic and dangerous emissions, had and continues to have a substantial likelihood of causing frequent and significant injury to the Ferullos, the Ferullos' property, and the Ferullos' property rights.

145. Further, some or all of the acts or omissions of Defendant Central New York described herein, including those of its officers, agents, contractors, and/or employees were intentional or grossly, recklessly, or wantonly negligent, and were done with utter disregard for the Ferullos' rights, property, safety, and wellbeing, and therefore, the Ferullos are entitled to an award of punitive damages.

**WHEREFORE,** Plaintiffs Ferullo hereby seek all damages allowed under the laws of the Commonwealth of Pennsylvania from the Defendant Central New York Oil and Gas Company, LLC to compensate the Ferullos for all injuries caused by Defendant Central New York's negligent and reckless acts or omissions,

for punitive damages to be determined at trial in an amount set by law or the trier of fact sufficient to punish Defendant Central New York for the above-described conduct and to deter others from like conduct; that the costs of this action be assessed against Defendant Central New York; and for such other and further relief as this honorable Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

/s/ Edward Ciarimboli
Edward Ciarimboli
(PA Bar No. 85904)
Clancy Boylan
(PA Bar No. 314117)
FELLERMAN & CIARIMBOLI
183 Market Street, Suite 200
Kingston, PA 18704
Phone: (570) 714-4878
Fax: (570) 714-7255
ejc@fclawpc.com
cb@fclawpc.com

36